**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMY NEWPORT, *individually and on behalf of all others similarly situated,*     ) ) ) ) | |
|     ) | No. 4:24-CV-252 HEA |
| Plaintiff,     ) ) | |
| v.     ) ) | |
| CVS PHARMACY, INC., et al.,     ) ) | |
| Defendants.     ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant CVS Pharmacy, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 20). Plaintiff opposes the motion. For the reasons that follow, Defendant CVS Pharmacy, Inc.'s Motion to Dismiss is denied.

### *I. Background*

Amy Newport alleges in her First Amended Complaint (hereinafter "Complaint") that Defendants CVS Pharmacy, Inc. ("CVS Pharmacy") and CVS Health Corporation ("CVS Health") have misled consumers into believing that certain over-the-counter ("OTC") cough and flu medicines are "Non-Drowsy"

formulas, when in fact they cause drowsiness.[1]  Defendants market and sell CVS-branded cough and flu medicines that are labeled "Non-Drowsy." Plaintiff alleges that these CVS-branded medicines contain dextromethorphan hydrobromide ("DXM"), which she contends is scientifically proven to cause drowsiness. Plaintiff alleges she was misled into purchasing CVS branded "Non-Drowsy" cough and flu OTC medicine at a premium price under the false representation that it did not cause drowsiness when it did.  Plaintiff seeks to bring this suit on behalf of herself and those similarly situated.

In her Complaint, Plaintiff brings four counts against Defendants CVS Pharmacy and CVS Health Corporation pursuant to state law.[2]  Plaintiff alleges the following three claims against the two Defendants under Missouri common law: Breach of Warranty (Count I); Breach of Implied Contract (Count II); Unjust Enrichment (Count III).  In Count IV, Plaintiff asserts Defendants have violated the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 401.010, *et seq.*, as well as other "materially-similar" consumer protection laws in the following eight other states and the District of Columbia: Illinois, 815 ILCS § 501/1, *et. seq.;*

---

[1]In addition to Defendants CVS Pharmacy and CVS Health Corporation, in the caption of her Complaint Plaintiff names 10 John and Jane Doe Defendants. However, but there are no factual allegations against any of these defendants in her Complaint.  The Court will dismiss without prejudice Plaintiff's claims against Defendants Does 1 through 10.

[2]This matter is before the Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).  Defendants CVS Pharmacy and CVS Health are Delaware corporations with their principal places of business in Rhode Island.  Plaintiff is a citizen of Missouri.

Maryland, Md. Code Ann. Com. Law, § 13-301, *et. seq.*; Hawaii, Haw. Rev. Stat. § 480-2, *et. seq.*; New York, N.Y. Gen. Bus. Law § 349, *et. seq.*; Rhode Island, R.I. Gen. Laws § 6-13.1- 5.2(B), *et. seq.*; Vermont, Vt. Stat. Ann. tit. 9, §§ 2451, *et. seq.*; Washington, Wash. Rev. Code § 19.86.010, *et. seq.*; Connecticut, Conn. Gen. Stat. Ann. §§ 42-110, *et. seq.*; and Washington D.C., D.C. Code §§ 28-3901, *et. seq.*

CVS Pharmacy moves to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), all of the claims against it on the following grounds: (1) Plaintiff's claims are preempted by federal law; (2) Plaintiff has not alleged facts to make her claim that DXM causes drowsiness plausible; (3) Plaintiff's express-warranty claim fails because she does not plausibly allege that she gave CVS Pharmacy notice of the alleged breach; (4) Plaintiff's breach-of-implied-contract claim fails because she does not allege facts that show CVS Pharmacy violated an implied covenant of good faith and fair dealing; (5) Plaintiff's claims for unjust enrichment or other equitable relief fail because she has not adequately alleged that she lacks a remedy at law; (6) Plaintiff has not sufficiently alleged the elements of an MMPA claim; and (7) Plaintiff can only assert claims under Missouri law.

Plaintiff opposes dismissal and argues that her claims are not preempted by federal law, and that the Complaint sufficiently states a claim under the MMPA. As for the state common law claims, Plaintiff states that she is voluntarily withdrawing these claims.

3

## II.  Legal Standard

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Blomker v. Jewell*, 831 F.3d 1051, 1055 (8th Cir. 2016) (quotation omitted). The facts alleged must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  A complaint must offer more than "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," *Twombly*, 550 U.S. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Id.* at 555–56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. *Iqbal*, 556 U.S. at 678 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal

conclusions can provide the framework for a complaint, they must be supported by factual allegations. *Id.*

A claim sounding in fraud is subject to a heightened pleading standard, and the plaintiff "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy this requirement, the pleader must generally set forth the "who, what, when, where, and how of the misconduct charged." *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (internal quotation marks and quoted cases omitted). "[C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002) (quoting *Com. Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995)).

### III.  Discussion

#### A. Preemption

CVS Pharmacy argues that Plaintiff's state law claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301, *et seq.*, which regulates the marketing and labeling of OTC drugs. "The general law of preemption is grounded in the Constitution's command that federal law shall be the supreme Law of the Land." *St. Louis Effort for AIDS v. Huff*, 782 F.3d 1016, 1021 (8th Cir. 2015) (quotation omitted).  Congress can preempt state law in the following three

ways: "(1) expressly though statutory language like a preemption clause; (2) implicitly when a state law 'conflict[s] with' or stands as an obstacle to federal law; or (3) implicitly by 'occup[ying] a legislative field,' leaving no room for state law." *WinRed v. Ellison*, 59 F.4th 934, 941 (8th Cir. 2023). CVS Pharmacy argues Plaintiff's claims conflict with federal law in that she seeks to impose a requirement that is different from what is required under the FDCA.

The Eighth Circuit has instructed that "[n]otwithstanding the supremacy of federal law, '[c]onsideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.'" *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1140 (8th Cir. 2024) (quoting *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 516 (1992)). "Indeed, there is a 'presumption that state or local regulation of matters related to health and safety is not invalidated under the Supremacy Clause.'" *Id.* (quoting *Hillsborough Cnty., Fla. v. Automated Med. Lab'ys, Inc.*, 471 U.S. 707, 715 (1985)).

The FDCA states in relevant part:

> [N]o State or political subdivision of a State may establish or continue in effect any requirement—
>
> (1)   that relates to the regulation of a [nonprescription] drug ...; and
>
> (2)   that is different from or in addition to, or that is otherwise not identical with, a requirement under this chapter.

6

21 U.S.C. § 379r(a)(2).

A state law claim is preempted if it seeks to impose "requirements that differed from, or added to" federal requirements. *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 330 (2008). For example, a claim that seeks to impose additional warnings under state law is "precisely the type of state requirement" that is preempted. *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (internal citation omitted) (citing *Riegel*, 552 U.S. at 330). But a plaintiff can use state-law causes of action to enforce federal requirements because, in that situation, any state duties imposed would "parallel" the federal ones. *Riegel*, 552 U.S. at 321. Therefore, if a plaintiff is suing for conduct that violates the FDCA, the claim is not preempted. *Id.*

Here, CVS Pharmacy argues that Plaintiff's claims are preempted by the FDCA, because the FDA has issued regulations that specifically address packaging warnings for drowsiness on cough medicines, and Plaintiff seeks to impose a different requirement. In support of its argument, CVS Pharmacy points to the monograph for the category of drugs that include cough medicines, as well as the regulatory history behind the monograph.

In regulating OTC drugs, the Food and Drug Administration ("FDA") issues what it refers to as "monographs." Monographs are detailed regulations for therapeutic categories of drugs, such as antacids, sunscreens, and as applicable here,

cough suppressants, which are also known as "antitussives."  For each therapeutic category, a monograph "lists the drugs that may be sold over the counter within that category, and then sets out dosage and labeling requirements for each drug, including the precise language that must be used to describe each drug's indications and the precise warnings that must accompany each drug." *Stephens v. Target Corp.*, 694 F. Supp. 3d 1136, 1140 (D. Minn. 2023) (citing  21 C.F.R. §§ 330.1, 330.10).  In other words, the monograph sets dosage and labeling requirements for each drug, including warning labels. 21 C.F.R. Ch. I, Subch. D, Pts. 331–58.

The monograph that includes OTC cough suppressants is codified in 21 C.F.R. § 341, and it requires drowsiness warnings for certain antitussive drugs, such as diphenhydramine citrate and diphenhydramine hydrochloride.  The monograph, however, does not require a drowsiness warning for drugs containing DXM. *Compare* 21 C.F.R. §§ 341.72(c)(3)–(4), (6)(ii)–(iii), 341.74(c)(4)(viii)–(ix) *with id.* at § 341.74(c)(3)(v)–(vi) (identifying warnings that must be on DXM product labels). The applicable monograph neither requires nor forbids a "non-drowsy" label on cough suppressants that contain DXM.

As discussed above, a state law claim is preempted if it seeks to impose requirements that are different from or in addition to the federal requirements. *Riegel*, 552 U.S. at 321.  In this case, Plaintiff is not asking that CVS Pharmacy be required to remove a statement from its packaging that the FDCA requires or that it

include a statement that the FDCA does not require, such as "may cause drowsiness." Both sides agree that these claims would be preempted by federal law. Instead, she seeks to hold CVS Pharmacy liable for adding the description "non-drowsy" to cough suppressants that contain DXM. She alleges CVS Pharmacy added the description to its packaging voluntarily and that describing DXM as "non-drowsy" is inaccurate and misleading.

While the monograph for cough suppressant drugs does not endorse or even mention "non-drowsy," CVS Pharmacy argues that Plaintiff's claims are nevertheless preempted. CVS Pharmacy argues that when FDA developed the monograph, which took more than a decade, it considered whether DXM required a drowsiness warning, and ultimately, the FDA's expert panel concluded based on the data and studies it had, that one was not required. CVS further points to the fact that when developing the monograph, the FDA considered whether antitussives could be marketed as sleep aids. In the regulatory history, the FDA acknowledges that "scientific literature describes slight drowsiness as a side effect for [ ] dextromethorphan preparations." 48 Fed. Reg. at 48,589. However, it noted that it was unaware of data supporting the classification of DXM as a direct sleep aid, although the FDA stated during the proposed rulemaking that manufacturers could claim that DXM aided sleep by suppressing cough.[3] Cold, Cough, Allergy,

---

[3] More specifically, the FDA stated the following in the proposed monograph:

Bronchodilator, and Antiasthmatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for OTC Antitussive Drug Products, 48 FR 48576-01.

According to CVS Pharmacy, this regulatory history establishes that the FDA squarely addressed the issue of drowsiness when it developed and drafted the monograph, and it placed cough suppressants into two categories – drowsy (or nighttime) and non-drowsy (or daytime). CVS Pharmacy asserts DXM is clearly in the non-drowsy (or daytime) category. While CVS Pharmacy admits that the FDA only imposes labeling requirements regarding drowsiness on products in drowsy (nighttime) category, it argues that if Plaintiff were to prevail in this case, manufacturers and sellers of cough suppressants with DXM "would necessarily be

---

The agency recognizes that there might be a secondary pharmacological action of an antitussive, tantamount to a sedative effect, that helps an individual to sleep. The scientific literature describes slight drowsiness as a side effect for both codeine and dextromethorphan preparations (Refs. 1 through 7). However, the Panel stated that the drowsiness caused by a 20-mg oral dose of codeine, which it placed in Category I as an antitussive, is not significantly greater than that of a placebo (41 FR 38339). The Panel made no mention of drowsiness in its discussion of dextromethorphan, also a Category I antitussive (41 FR 38340). The agency is not aware of data demonstrating that the antitussive ingredients codeine and dextromethorphan could be classified as Category I nighttime sleep-aids or that they require a drowsiness warning. Therefore, sleep-aid claims directly related to the ability of an antitussive ingredient to cause drowsiness, e.g., "For relief of occasional sleeplessness." will remain in Category III.

Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products for Over-the-Counter Human Use; Tentative Final Monograph for OTC Antitussive Drug Products, 48 Fed. Reg. 48576-01, 48589 (Oct. 1, 1983).

subject to labeling requirements different from and in addition to those put in place by the FDA," and thus her claims are preempted.    (ECF No. 20 at 8).  The Court does not agree with the CVS Pharmacy approach or conclusion.

A number of courts across the country have addressed the exact preemption issue at bar and they have reached different conclusions.[4] After reviewing these cases, the Court finds the analysis in *Stephens v. Target Corporation,* 694 F. Supp. 3d 1136, 1143 (D. Minn. 2023), to be well-reasoned and persuasive. In *Stephens*, the defendant made the same arguments as CVS does here.  It asked that the district court examine and consider the length regulatory history of the monograph for antitussives and find that the FDA had studied the sedative effect of DXM and ruled implicitly that DXM is "non-drowsy" and, therefore, the plaintiff's claim was preempted by federal law.  *Stephens*, 694 F. Supp. 3d at 1144.  The court in *Stephens* declined to do so.  First, it noted that the defendant's proposed approach requires a

---

[4] *Compare Gibson v. Albertsons Cos., Inc.*, No. 22 CV 642, 2024 WL 4514041, at *8 (N.D. Ill. Oct. 17, 2024) (finding federal law would preempt a state-law claim to add a drowsiness warning, but it does not preempt a state law that prohibits an affirmative misrepresentation that the medicine is "non-drowsy"); *Calchi v. TopCo Assocs., LLC*, No. 22-CV-747, 2024 WL 4346420, at *10 (N.D. Ill. Sept. 30, 2024) (same); *Stephens v. Target Corp.*, 694 F. Supp. 3d 1136, 1143 (D. Minn. 2023) (same); *Davis v. The Kroger Co.*, No. 222CV02082MEMFRAOX, 2023 WL 9511156, at *5–8 (C.D. Cal. Sept. 22, 2023) (same); *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1276 (C.D. Cal. 2022) (same); *with Goldstein v. Walmart, Inc.*, 637 F. Supp. 3d 95, 111 (S.D.N.Y. 2022) (finding a prohibition on a "non-drowsy" label would impose a different requirement because the FDA expressly considered drowsiness and, therefore, the claim is preempted); *Calchi v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, No. 22-CV-1341 (KMK), 2023 WL 2447399, at *2 (S.D.N.Y. Mar. 10, 2023) (same); *Amara v. Publix Supermarkets, Inc.*, No. 8:22-CV-367-VMC-JSS, 2022 WL 3357575, at *4–5 (M.D. Fla. Aug. 15, 2022) (same).

court to review thousands of pages of regulatory history in an attempt "to ascertain why an agency chose not to say anything about a topic in a regulation, and then attempt to imbue the agency's silence with preclusive effect." *Id.* The court wrote that turning to regulatory history "would infect preemption analysis with all of the mischief and indeterminacy that comes with defining the scope of a statute or regulation by focusing not on what the statute or regulation actually says, but on legislative or regulatory history." *Id. (citing Conroy v. Aniskoff,* 507 U.S. 511, 519 (1993) (Scalia, J., concurring)). Second, the court in *Stephens* rejected the defendant's proposed approach because it "would bestow preemptive effect on agency action that lacks any force of law." *Id.* (citing *Wyeth v. Levine*, 555 U.S. 555, 587–88 (2009) (Thomas, J., concurring) ("Congressional and agency musings ... do not satisfy the Article I, § 7, requirements for enactment of federal law and, therefore, do not pre-empt state law under the Supremacy Clause.")). The Court agrees and adopts the reasoning in *Stephens*. The Court declines to consider the regulatory history of the applicable monograph, and instead the Court will look to the statute and regulation in determining what federal law requires. It is clear from the plain language of the regulation that for drugs containing DXM the FDCA does not require a drowsiness warning, and that the FDCA does not affirmatively approve or endorse "non-drowsy" or "daytime" labeling for DXM.

But even if the Court were to consider the regulatory history of the monograph in order to ascertain the FDA's true intent as to the labeling for DXM, the Court does not find that the history highlighted by CVS Pharmacy supports its argument. The FDA did not determine, as CVS Pharmacy suggests, that antitussive drugs can be divided into two categories: drowsy (or nighttime) and non-drowsy (or daytime). Rather, the FDA considered whether products containing DXM required a drowsiness warning and concluded that more data was needed before such a warning should be required. 48 Fed. Reg. 48576-01, 48589. A lack of data does not place the drug in a non-drowsy category. In fact, there is no evidence before the Court that the FDA even considered a non-drowsy category. The expert panel further found there was insufficient data to support a manufacturer's claim that an antitussive with DXM was in of itself a sleep aid. *Id*. Again, this is far from an FDA endorsement of non-drowsy or daytime labeling. The Court finds that there is a distinction in this context between an affirmative representation that a product is non-drowsy versus what is communicated when the representation is omitted. CVS Pharmacy chose to add "non-drowsy" to the labels of medicines containing DXM; it was not required by the FDCA or its regulations.

Plaintiff alleges that DXM does cause drowsiness, and as discussed below, the Complaint sets forth sufficient factual allegations to support this claim in the pleading stage. She alleges CVS Pharmacy's claim that its cough suppressant with

13

DXM is "non-drowsy" is false and deceptive and seeks to hold CVS Pharmacy liable for voluntarily adding deceptive language to its labels. Under the FDCA there is a general prohibition against false or misleading labeling.  *See* 21 U.S.C. § 352; 21 C.F.R. § 330.1(c).  The FDCA prohibits misbranding of a drug, which occurs if a drug's "labeling is false or misleading in any particular." 21 U.S.C. § 352(a)(1).  The Court finds that Plaintiff is not seeking to impose a requirement that is different from the federal requirements, but rather, her claim is parallel to federal law because she is seeking to hold CVS accountable for labeling that she alleges is false, deceptive, and misleading.  *Calchi*, 2024 WL 4346420, at *9 ("The FDCA already prohibits 'false or misleading' labeling, so a state law that prohibits false or misleading labeling doesn't create a new requirement different from the FDCA."); *Stephens*, 694 F. Supp. 3d at 1146 ("Plaintiffs are thus pursuing parallel state-law claims by attempting to use state law to independently enforce FDA regulations against false and misleading labeling.") (cleaned up). *See also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 485 (7th Cir. 2020) ("while states may not require sellers to add further labeling that is not required by federal law, they may prevent sellers from voluntarily adding deceptive content that is not required by federal law."). The Court concludes Plaintiff's claims are not preempted by federal law.

## B. Plausibility of Drowsiness Allegations

CVS Pharmacy also argues that Plaintiff's claims should be dismissed because she fails to allege sufficient facts from which one can infer that the non-drowsy label claim is false.  At this stage in the proceeding, the Court must accept all facts pleaded in the Complaint as true. *Twombly*, 550 U.S. at 556.

The Complaint alleges that Plaintiff purchased CVS Pharmacy's "non drowsy" cough suppressants and used the product according to the instructions.  She alleges that after taking the recommended dosage, she "became considerably drowsy in an unexpected, unnatural manner."  (ECF No. 4 at 18, ¶ 71).  She further alleges that there were no other facts that would have caused Plaintiff to become drowsy at such time and in that manner.  But Plaintiff does not rely on her personal experience only.

The Complaint also references outside materials in support of the allegation that DXM causes drowsiness. It cites to webpages on MedlinePlus.gov, WebMD.com, and MayoClinic.org, which list drowsiness as one the side effects of DXM. (ECF No. 19 at 7, ¶¶ 29, 31).  The Complaint also cites scientific journals, textbooks, and a data sheet from Pfizer, which lists drowsiness as a common adverse reaction associated with clinical use of DXM.  (*Id.* at ¶¶ 30-33).  In addition, the Complaint cites to studies, including one that found around ten percent of those who use DXM products develop drowsiness within three days of starting treatment. (*Id.* at ¶ 32). The Complaint also refers to the Federal Aviation Administration's

prohibition on pilots taking DXM before flying, which suggests that DXM can cause drowsiness and interfere with a pilot's performance. (*Id*. at ¶ 29). Finally, the Complaint alleges that the FDA's adverse event report database confirms that "sedation" is one of the ten most frequently cited side effects of dextromethorphan-containing products." (*Id.* at ¶ 34).

In its motion, CVS Pharmacy argues that the materials the Complaint cites falls short of establishing that DXM causes drowsiness, and it points to a number of supposed flaws in the evidence. Assessing the reliability or weight of the outside materials cited in the Complaint is outside the scope of a Rule 12(b)(6) motion to dismiss. Plaintiff's allegation that DXM causes drowsiness is facially plausible, and CVS Pharmacy's argument is without merit. *Calchi*, 2024 WL 4346420, at *10 (rejecting identical argument that plaintiff' had not plausibly alleged that defendant's "non-drowsy" and "daytime" labels were false); *Stephens*, 694 F. Supp. 3d at 1141–42 (same).

### C. Sufficiency of MMPA Allegations

CVS Pharmacy moves to dismiss Plaintiff's claim under the MMPA. The MMPA was enacted to protect Missouri consumers from fraudulent business practices. *State ex rel. Nixon v. Telco Directory Pub.*, 863 S.W.2d 596, 601 (Mo. 1993) (en banc); *State v. Polley*, 2 S.W.3d 887, 892 (Mo. Ct. App. 1999). The MMPA permits civil claims by "[a]ny person who purchases ... merchandise

16

primarily for personal, family or household purposes and thereby suffers an ascertainable loss of money or property, real or personal, as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020 ...." Mo. Rev. Stat. § 407.025. *See also Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 773 (Mo. 2007) (en banc).

To state a claim under the MMPA, Plaintiff must allege that she (1) purchased merchandise; (2) for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020 of the MMPA. *Hess*, 220 S.W.3d at 773. Section 407.020 bars a variety of conduct, including "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact." Mo. Rev. Stat. § 407.020.

In 2020, the MMPA was amended to provide that "[a] person seeking to recover damages shall establish" the following:

(a) That the person acted as a reasonable consumer would in light of all circumstances;

(b) That the method, act, or practice declared unlawful by section 407.020 would cause a reasonable person to enter into the transaction that resulted in damages; and

(c) Individual damages with sufficiently definitive and objective evidence to allow the loss to be calculated with a reasonable degree of certainty.

Mo. Rev. Stat. § 407.025.  The following language was also added to the statute: "A court may dismiss a claim as a matter of law where the claim fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer."  Id.

CVS Pharmacy argues that Plaintiff fails to state an MMPA claim under the heightened pleading standard of Rule 9(b).  It argues that Plaintiff only vaguely alleges when and where she purchased the product.  The Court does not agree. Plaintiff alleges that on or about October 20, 2023, she purchased a CVS branded Tussin DM "non-drowsy" cough suppressant in a four-ounce bottle from a CVS store in Arnold, Missouri.  Plaintiff also provides the address of the store.  These factual allegations are sufficient even under the heighted pleading standard.

CVS Pharmacy also argues that Plaintiff does not adequately explain how she suffered an ascertainable loss.  Courts in Missouri have interpreted the ascertainable loss element "as incorporating Missouri's long-standing 'benefit of the bargain' common law fraud remedy." *Vitello v. Natrol, LLC*, 50 F.4th 689, 693 (8th Cir. 2022) (citing *Sunset Pools of St. Louis, Inc. v. Schaefer*, 869 S.W.2d 883, 886 (Mo. Ct. App. 1994)).  "The 'benefit of the bargain' rule awards a prevailing party the difference between the value of the product as represented and the actual value of the product as received."  *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1012 (E.D. Mo. 2014).  The benefit-of-the-bargain rule permits recovery when a

18

product is worth less in actuality than as represented. *See Browning v. Anheuser-Busch, LLC*, 539 F. Supp. 3d 965, 972 (W.D. Mo. 2021) ("a plaintiff adequately pleads if he alleges an ascertainable loss under the benefit-of-the-bargain rule, which compares the actual value of the item to the value of the item if it had been as represented at the time of the transaction.") (quotation omitted).

Plaintiff alleges in her Complaint that she did not receive the value of what she bargained for, and instead she received a product that did not live up to one of its most-prominently advertised benefit – non-drowsiness. She further alleges that she was damaged in the amount of the difference between the cost she paid for the cough suppressant and the actual value of the product. She alleges that for her the cough suppressant has no value, because it caused drowsiness, something Plaintiff was specifically attempting to avoid, "while having a negligible effect, if any, on Plaintiff's congestion symptoms." (ECF No. 19 at 18-19, ¶ 77). CVS Pharmacy contests as "hardly plausible" Plaintiff's allegation that the product she purchased was worth nothing to her. CVS Pharmacy can test Plaintiff's contention in discovery because the Court finds the Complaint sufficiently alleges an ascertainable loss under the benefit of the bargain rule.

### D. Claims under Other States' Laws

In her Complaint, Plaintiff asserts CVS Pharmacy violated consumer protections laws in Illinois, Maryland, Hawaii, New York, Rhode Island, Vermont,

Washington, Connecticut, and Washington D.C., and she seeks to represent a class of plaintiffs from these states and the District of Columbia.  CVS Pharmacy argues Plaintiff lacks standing to bring claims on behalf of consumers from other states because she is a Missouri resident who purchased a product in Missouri.

The Eighth Circuit has not addressed whether a named plaintiff in a proposed Rule 23 class action has standing to bring claims on behalf of individuals in other states.  Other circuits, however, have examined the issue and concluded it is not an issue of Article III standing, but rather a class certification issue under Rule 23 or a merits issue.  *See In re Zantac (Ranitidine) Prod. Liab. Litigaion*, No. 21-10335, 2022 WL 16729170, at *6 (11th Cir. Nov. 7, 2022) (finding claims the plaintiffs made on behalf of class members who purchased products in states other than the plaintiffs' home state should not be stricken on standing grounds but should be addressed under Rule 23's requirements of commonality and typicality); *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 134 (4th Cir. 2021) (same); *In re Asacol Antitrust Litig.*, 907 F.3d 42, 51 (1st Cir. 2018) (plaintiff may have standing to pursue class claims under laws of multiple states based on a purchase in the plaintiff's state); *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 93 (2d Cir. 2018) ("as long as the named plaintiffs have standing to sue the named defendants, any concern about whether it is proper for a class to include out-

of-state, nonparty class members with claims subject to different state laws is a question of predominance under Rule 23(b)(3)).

Furthermore, courts in this District have ruled that a decision on the issue of class certification under Rule 23 "is logically antecedent" to determining whether a named plaintiff has standing to assert claims on behalf of absent, putative class members under other state laws and, therefore, the issue of class certification should be addressed first. *Moore v. Compass Grp. USA, Inc.*, No. 4:18CV1962 RLW, 2019 WL 4723077 (E.D. Mo. Sept. 26, 2019), at *7. *See also Buchta v. Air Evac EMS, Inc.*, No. 4:19CV00976 SRC, 2019 WL 4468943, at *4 (E.D. Mo. Sept. 18, 2019). Based on this body of law, the Court does not find Defendant's argument persuasive and declines to now address whether Plaintiff can bring claims on behalf of consumers in other states and the District of Columbia.

## *IV. Conclusion*

The Court finds that Plaintiff's state law claims are not preempted by federal law. As alleged, Plaintiffs' state law claims are parallel to the requirements of the FDCA. Further, Plaintiff sufficiently alleges that DXM causes drowsiness, and her Complaint states a claim under the MMPA. Finally, the Court declines to address at this this point in the proceedings whether Plaintiff can pursue claims on behalf of consumers in other states and the District of Columbia.

Accordingly,

**IT IS HEREBY ORDERED** that CVS Pharmacy, Inc.'s Motion to Dismiss Plaintiff's First Amended Complaint is **DENIED.** (ECF No. 20).

**IT IS FURTHER ORDERED** that consistent with Plaintiff's representations in her Response in Opposition to CVS Pharmacy, Inc.'s Motion to Dismiss, (ECF No. 21 at 15), the Court **DISMISSES** Counts I, II, and III of Plaintiff's First Amended Complaint.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Does 1-10 are **DISMISSED without prejudice.**

**IT IS FURTHER ORDERED** that Defendant CVS Pharmacy Motion to Dismiss Plaintiff's Class Action Petition is **DENIED as moot.** (ECF No. 17).

Dated this 20th day of November, 2024.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE